# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

BENNY J. HARROLLE )
)
)
Plaintiff, )
)
v. )            No.  06-CV-255-SAJ
)
MICHAEL J. ASTRUE, )
Commissioner of the Social Security )
Administration,[1] )
)
Defendant. )

### OPINION AND ORDER[2]

Pursuant to 42 U.S.C. § 405(g), Plaintiff appeals the decision of the Commissioner denying Social Security benefits.[3]  Plaintiff asserts that (1) the ALJ erred by not finding Plaintiff's impairments severe at Step Two of the sequential evaluation process; and (2) the ALJ erred in his credibility analysis.  For the reasons discussed below, the Court reverses and remands the Commissioner's decision for further proceedings consistent with this opinion.

---

[1] Effective February 1, 2007, pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue, Acting Commissioner of Social Security, is substituted for Jo Anne B. Barnhart as the defendant in this action.  No further action need be taken to continue this suit by reason of the last sentence of section  42 U.S.C. § 405(g) of the Social Security Act.

[2] This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

[3] Administrative Law Judge Stephen C. Calvarese (hereafter "ALJ") concluded that plaintiff was not disabled by decision dated January 18, 2006. [R. 15-19].  Plaintiff appealed the decision by the ALJ to the Appeals Council.  The Appeals Council issued a notice on April 5, 2006, stating that the ALJ's January 18, 2006 decision denying benefits to Plaintiff is the final decision of the Commissioner. [R. 5-8].

## 1.  FACTUAL AND PROCEDURAL HISTORY

Plaintiff, Benny J. Harrolle, was born on July 15, 1956, and was forty-nine years old at the time of the hearing. (R. 201).  Plaintiff has described his prior work experience as "heavy equipment operator" or "iron worker" in metal building construction.  (R. 58, 64, 91, 93, 202).  Plaintiff had a heart attack in 1997 and claims to have occasional chest pain, dizziness and fatigue as a result.  (R. 98, 208-210).  Plaintiff also claims that he injured his neck in 1999, when he fell at his work place.  He reported to one physician that he had received some chiropractic care for his neck pain but that it became progressively worse from that time forward. [R. 98, 203-207].  Plaintiff alleges that he became unable to work on November 8, 2002 due to neck, back and arm pain as well as problems with his heart. [R. 48, 57, 202-203].

Plaintiff filed an application for social security disability insurance benefits on July 1, 2004, and he identified "heart attack/no energy" as his disabling condition.  [R. 48-50, 57].  Later, he reported having pain in his arm and neck, wearing a neck brace, and experiencing pain in his back and arms. [R. 79-80, 82, 87, 94].  The Commissioner initially denied Plaintiff's application on October 28, 2004 [R. 33] and, on reconsideration, denied it again on January 11, 2005. [R. 34].  Plaintiff filed his Request for Hearing Before an ALJ on February 9, 2005 [R. 43], and the ALJ held the hearing on November 30, 2005. [*See* R. 198-223].  On January 18, 2006, the ALJ concluded that Plaintiff did not have a severe impairment, and that his allegations of pain and functional limitations were not totally credible. [R. 15-19].  Plaintiff filed A Request for Review of Hearing Decision on February 23, 2006. [R. 9-11], and the Appeals Court denied his request on April 5, 2006.  [R. 5-8]. Plaintiff now seeks judicial review.

## 2. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social

security claims.  *See* 20 C.F.R. §§ 404.1520, 416.920.  Disability under the Social Security

Act is defined as the

> inability to engage in any substantial gainful activity by reason
> of any medically determinable physical or mental impairment
> . . . .

42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work in the
> national economy. . . .

42 U.S.C. § 423(d)(2)(A).[4]

The Commissioner's disability determinations are reviewed to determine (1) if the

correct legal principles have been followed, and (2) if the decision is supported by

substantial evidence.  *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th

Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

---

[4]Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510, 416.910 and 404.1572, 416.972).  Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  *See* 20 C.F.R. §§ 404.1521, 416.972.  If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings").  If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled.  If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work.  A claimant is not disabled if the claimant can perform his past work.  If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy.  If a claimant has the RFC to perform an alternate work activity, disability benefits are denied.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*.  *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993).  The Court will "neither reweigh the evidence nor substitute its judgment for that of the Commissioner." *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000); *see Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational.  *Williams*, 844 F.2d at 750; *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

"The finding of the Secretary[5] as to any fact, if supported by substantial evidence, shall be conclusive, . . ."  42 U.S.C. §  405(g).  Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750.  In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance.  *Perales*, 402 U.S. at 401.  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Williams*, 844 F.2d at 750.

This Court must also determine whether the Commissioner applied the correct legal standards.  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards.  *Glass*, 43 F.3d at 1395.

### 3. ADMINISTRATIVE LAW JUDGE'S DECISION

---

[5]Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security.  P.L. No. 103-296.  For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

The ALJ found that Plaintiff has two medically determinable impairments: (1) "status post cardiac arrest," and (2) neck and back pain. [R. 19].   However, the ALJ was not persuaded that Plaintiff's impairments were as severe as alleged, and he concluded that the physical examination reports did not support the extent of physical limitations described by Plaintiff in his testimony. [R. 18].   The ALJ specifically found that Plaintiff did not have any impairment or impairments that significantly limited Plaintiff's ability to perform basic work-related activities and, therefore, Plaintiff did not have a "severe" impairment as set forth in 20 C.F.R. § 404.1520.   Accordingly, the ALJ determined that the Plaintiff was not entitled to disability insurance benefits under the Social Security Act. [R. 19].

## 4. REVIEW

Initially, Plaintiff contends that the ALJ erred by not finding Plaintiff's impairments severe at Step Two of the Social Security evaluative process.   At Step Two, the claimant must establish he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.   20 C.F.R. §§ 404.1520, 416.920. "Basic work activities are 'abilities and aptitudes necessary to do most jobs.'" *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (quoting 20 C.F.R. § 404.1521(b)). Although the claimant need only a *de minimus* showing of an impairment at Step Two, he must show "more than the mere presence of a condition or ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997).   An impairment giving rise to disability benefits is one which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques."   42 U.S.C. § 423(d)(3).   Therefore, "[t]he Step Two severity determination is based on medical factors alone, . . ." *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003).

5

Social Security Ruling ("SSF") 96-3 sets forth the process for a Step Two determination: (1) the claimant must have a medically determinable impairment; (2) this impairment must reasonably be expected to produce the alleged symptoms and (3) once the claimant establishes the requisite connection between the medically determinable impairments(s) and alleged symptoms(s), the Commissioner is to then consider the "intensity, persistence, or functionally limiting effects of the symptom(s)" to determine whether the limitation is severe; that is, whether it has more than a minimal effect on the claimant's ability to do basic work activities.  SSR 96-3p. "Only those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits without undertaking the subsequent steps of the sequential evaluation process. *Langley*, 373 F.3d at 1123 (citation and internal quotations omitted).

The ALJ based his decision as to Plaintiff's neck and back pain primarily on two medical examination reports. [R. 17-18].  The ALJ relied, in part, on the medical report of Dr. Roger D. Prock, who examined Plaintiff at the Veteran's Administration Medical Center ("VAMC") on July 7, 2004. [R. 134].  Dr. Prock's medical report indicates that Plaintiff was in no acute distress, and Plaintiff had normal strength and sensation in his upper extremities. (R. 137).  Although the ALJ recites this aspect of Dr. Prock's report, the ALJ fails to note that Dr. Prock's diagnostic "impression" was "chronic neck pain ? etiology suspect degen disc disease," [sic] and his plan was to obtain a soft collar for Plaintiff [*see* R. 139], prescribe Flexeril (a muscle relaxant), and to order an x-ray [*see* R. 142] and an MRI of Plaintiff's cervical spine. *Id.*  Apparently, Dr. Prock also referred Plaintiff for a physical therapy consultation to learn exercises for stretching and gentle strengthening of his spine. [R. 135.] The radiology report ordered by Dr. Prock showed "moderate to

advance[d] diffuse degenerative disc disease" [R. 142], and Dr. Prock later indicated a diagnosis of degenerative disc disease for Plaintiff. [R. 117].

Dr. Amy S. Bokal of Aspen Medical imaging interpreted Plaintiff's MRI results, stating that Plaintiff had "cervical spinal canal stenosis from C3-C4 through C6-C7 due to posterior vertebral bond bony ridging with mild flattening of the cervical spinal at multiple levels." [R. 96.] *Dorland's Illustrated Medical Dictionary* defines "spinal stenosis" as a "[n]arrowing of the vertebral canal, nerve root canals, or intervertebral foramina of the lumbar spine caused by encroachment of the bone upon the space" and explains that "symptoms are caused by compression of the cauda equina and include pain, paresthesias, and neurogenic claudication." 1576 (28th ed. 1994); *see Stedman's Medical Dictionary* 385090 (27th ed. 2000) (defining "stenosis" as "[a] stricture of any canal or orifice"). Dr. Bokal also reported a "moderate-to-large right uncoveretebral spur which produces mild-to-moderate flattening of the right hemicord" along the C4-C5 vertebrate. *Id.* The ALJ never mentioned the MRI or its results.

The ALJ did reference the report of Gary R. Lee, M.D., who examined Plaintiff on September 27, 2004. [*See* R.17-18, 98-100.] Dr. Lee noted that Plaintiff complained of neck and chest pain. [R. 98.] The ALJ pointed out that Dr. Lee's examination results indicated normal range of motion for Plaintiff's cervical, thoracic, and lumbar spine, and that Plaintiff possesses 5/5 motor strength in the upper extremities. [R. 17-18; 99]. The ALJ failed, however, to note that Dr. Lee reported tenderness in the Plaintiff's cervical and lumbar spine, and Dr. Lee's diagnostic impression was that Plaintiff *had* neck and back pain --- not that Plaintiff had merely complained of neck and back pain. [R. 99.] Dr. Lee further

indicated pain and tenderness of Plaintiff's cervical spine on the "backsheet" attached to his report [R. 105].

In the ALJ's decision, he focused his attention on the medical reports addressing Plaintiff's complaints of chest pain, which tend to show that Plaintiff's "status post cardiac arrest" impairment may not be sufficiently severe to survive a Step Two analysis by itself. However, in determining whether a claimant's impairments are sufficiently severe, the Commissioner must consider the "combined effect" of all the claimant's impairments without regard to whether any such impairment considered separately would qualify as severe. 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 404.1523.   Accordingly, the Court finds that the ALJ erred in his Step Two determination, and the issue of whether the ALJ erred in his credibility analysis need not be addressed at this time.  While the Court makes no finding as to whether Plaintiff could be adjudicated disabled at subsequent steps of the sequential evaluation process, the Commissioner's decision must be **reversed and remanded** for further proceedings consistent with this opinion.

It is so ordered this 14ᵗʰ day of September, 2007.

Sam A. Joyner
United States Magistrate Judge

8